IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| JOSEPH BRZUCHOWSKI, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-5152-CV-SW-ODS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying his application for disability and supplemental security income benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff filed this application for disability benefits in March 2011. He originally alleged an onset date of May 28, 2008 but later amended the onset date to January 20, 2011. R. at 35-36. The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work with certain additional limitations, including a limitation to "simple routine, repetitive tasks that are not performed in a fast-paced production environment, or as an integral part of a team" that required "only simple, work-related decisions and in general relatively few work place changes." The ALJ also determined Plaintiff could only "occasionally interact with supervisors, coworkers and the general public." R. at 15. Based on the testimony from a vocational expert, the ALJ concluded Plaintiff could not return to his past relevant work as logger, maintenance worker, or welder, but that he could perform other jobs in the national economy. Plaintiff contends the ALJ erred in (1) failing to accord controlling weight to the opinion of his treating

physician, Dr. Raphael Torontow, and (2) formulating an RFC for which there was inadequate support.

In 2007, Plaintiff was working as a logger when he was involved in an accident at work. In September 2010 he was complaining of pain in his back that extended to his thighs and legs. Dr. Torontow referred Plaintiff to Dr. Brian Curtis, who noted Plaintiff was not in acute distress and demonstrated normal flexion. An x-ray taken in March 2010 "show[ed] good alignment of the lumbar bodies," and Dr. Curtis arranged for an MRI. R. at 242-44. At Dr. Curtis's request, Dr. Henry Mollman (from the University Hospital neurosurgery clinic) examined Plaintiff after the MRI was completed. Dr. Mollman noted the MRI revealed "normal curvature of the lumbar spine, typical degenerative disease with minimal bulging disk and disk attenuation at all levels with slight narrowing of the S-1 disk." However, at the L5 nerve root there was "clearly enlaragement of the nerve root and neural foramina, consistent with a neurofibroma."[1] However, the neurofibroma "does not cause any canal compromise to account for his left leg symptoms." Dr. Mollman opined the pain in Plaintiff's left leg was likely attributed to his 2007 injury. Surgery or other action was not called for because there were no symptoms attributable to the neurofibroma.

On physical examination, Plaintiff demonstrated a normal curve of the lumbar spine and full extension (although extension caused low back pain and some left leg pain). He demonstrated intact sensation and normal gait. There was no muscle weakness, and Plaintiff's reflexes were "2/5 right knee, absent left knee, trace both ankles." Dr. Mollman suggested Plaintiff follow up in a year to check on the neurofibroma's status. R. at 245-48.

Plaintiff asked Dr. Torontow to arrange for a second opinion. R. at 373. Another MRI was performed in December 2010. In all respects it was similar to the MRI taken in October. R. at 256.

---

[1]According to a website maintained by the National Institutes of Health, a "[n]eurofibroma is a tumor or growth located along a nerve or nervous tissue. It is an inherited disorder. If left unchecked, a neurofibroma can cause severe nerve damage leading to loss of function to the area stimulated by that nerve." http://www.nlm.nih.gov/medlineplus/ency/imagepages/9694.htm (last visited August 21, 2014).

Plaintiff's ensuing visits to Dr. Torontow focused on other medical conditions, unrelated to those at issue in this proceeding. While Plaintiff commented on difficulties with his back, these difficulties were not the purpose for these visits and no particular limitations were expressed by him or noted by Dr. Torontow. In May 2011, however, Plaintiff saw Dr. Torontow for "follow up on lower back pain and mri results. [S]tates back pain severe [and] at times almost falls." R. at 350. Dr. Torontow indicated Plaintiff would "be seeing Dr. John Clough next week because of this" and took no action and made no assessment. R. at 353. In June 2011 he reported his pain was 8/10; his prescriptions were refilled but nothing else of note was reported and nothing was changed. R. at 456-63. In September 2011 he complained of chest pain. R. at 384-90. In November he complained of abdominal pain; his back pain was rated at 10/10, but again the treatment was not changed and no further commentary about this condition was made. R. at 448-55. In January 2012, Plaintiff reported that his back pain had dropped to a 5/10; this visit was related to a sore throat. R. at 441-47. In April 2012 he reported shoulder pain that he rated at 10/10; there was no mention of his back. R. at 433-40. The following month he complained of a sore or insect bite on his elbow; his pain level was 4/10. R. at 426-32. The bite worsened, R. at 419-25, but by June 6 his condition improved; he reported his pain was 2/10. R. at 413-18.

      Dr. Torontow completed a Medical Source Statement – Physical ("MSS") on September 26, 2012. Among other things, he opined that Plaintiff needed to lie down twice a day for more than an hour on each occasion, could lift less than five pounds frequently and five pounds occasionally, stand or walk less than fifteen minutes at a time and for an hour per day, and sit for thirty minutes at a time and for four hours per day. He also indicated these conclusion were based on Plaintiff's medical history and clinical findings. R. at 491-92.

## II. DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the

Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

### A.

Plaintiff first argues the ALJ failed to bestow sufficient weight to Dr. Torontow's MSS. Generally speaking, a treating physician's opinion is entitled to deference. This general rule is not ironclad; a treating physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record. E.g., Anderson v. Astrue, 696 F.3d 790, 793-094 (8th Cir. 2012); Halverson v. Astrue, 600 F.3d 922, 929-30 (8th Cir. 2010); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). Here, there is little evidence to support the MSS (despite Dr. Torontow's indication that it was at least partially supported by clinical evidence). Plaintiff's MRI's were normal except for the neurofibroma, and specialists indicated the neurofibroma was not causing any problems and required no intervention. Plaintiff's visits to Dr. Tornotow were often about other maladies, and his pain seemed largely controlled; there is nothing in the records from Plaintiff's visits that supports Dr. Tornotow's MSS – or at least, nothing that justifies reversal of the ALJ's factual determination.

### B.

Plaintiff also contends the RFC formulation lacks sufficient support in the Record. While "a claimant's RFC is a medical question, . . . in evaluating a claimant's RFC, an

ALJ is not limited to considering medical evidence exclusively." Cox v. Astrue, 495 F.3d 614, 619 (8th Cir. 2007). It is simply not true that the RFC can be proved *only* with medical evidence. McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000); Dykes v. Apfel, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam). Evidence of Plaintiff's actual daily activities and the medical evidence that existed were sufficient to support the ALJ's determination about Plaintiff's capabilities. The medical evidence revealed no limitations greater than those the ALJ found to exist, and the ALJ also entitled to rely on Plaintiff's function report, R. at 21, which further substantiated his findings. The Court is left with the conclusion that there is substantial evidence to support the ALJ's determination.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

DATE: August 25, 2014